UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

VICTORIA MARINO,

                 Plaintiff,

      -against-

CITY UNIVERSITY OF NEW YORK;
HUNTER COLLEGE; DONNA L. ROBERTS,
in her official capacity; LORRI GUMANOW,
in her official capacity; TIMOTHY LACKAYE,
Chair, Department of Special Education, in his
Official capacity; MICHAEL SCHLEIFER,
Chair, Senate Grade Appeals Committee, in his
Official capacity; HUNTER COLLEGE
SENATE; JENNIFER J. RAAB, President of
Hunter College, in her official capacity,

                 Defendants.

-------------------------------------------------------X

**DECISION AND ORDER**
11-CV-3640 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

**PRELIMINARY STATEMENT**

The Plaintiff in this action invites the Court to change her grade to pass from fail. Federal Courts must reject the temptation to invade the essence of the Academy. For the reasons stated below, this Court dismisses this Complaint.

Plaintiff Victoria Marino brings this action against Defendants City University of New York ("CUNY"), Hunter College, the Hunter College Senate,[1] and five individuals in their official

---

[1] Neither Hunter College nor the Hunter College Senate has a legally cognizable identity separate from CUNY. *See* N.Y. Educ. Law. §§ 6202(5), 6203; *Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 n.2 (2d Cir. 2004) (per curiam); *Barry v. City Univ. of New York*, 700 F. Supp. 2d 447, 449 n.1 (S.D.N.Y. 2010) (Cote, J.). Consequently, all claims asserted against Hunter College or the Hunter College Senate are treated as claims against CUNY.

capacities: Donna L. Roberts, Lorri Gumanow, Timothy Lackaye, Michael Schleifer, and Jennifer J. Raab (collectively, the "Individual Defendants"). Plaintiff, a former graduate student at the College's School of Education (the "Master's Program"), alleges that the College, its professors, and administrators discriminated against her on the basis of her disabilities, in violation of the Fifth and Fourteenth Amendments to the Constitution, the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983, and 42 U.S.C. § 1985, Title II of the Americans With Disabilities Act ("ADA"), codified at 42 U.S.C. §12131 *et seq.*, and § 504 of the Rehabilitation Act of 1973, 28 U.S.C. § 794 *et seq.*

Defendants move this Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure arguing that CUNY and its officials are immune from suit under the Eleventh Amendment. In addition, Defendants ask this Court to dismiss all of Plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the reasons that follow, Defendants' motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

In resolving a motion to dismiss, the Court assumes all facts pled in the Complaint ("Compl.") to be true, and draws all reasonable inferences in favor of the plaintiff. *See LaFaro v. N.Y. Cardiothoracic Grp.*, 570 F.3d 471, 475 (2d Cir. 2009).

Plaintiff graduated *summa cum laude* from Hunter College in 2002 with a bachelor's degree in psychology and a 3.967 grade point average (GPA). *Id.* at ¶ 19–20. After her college graduation, Plaintiff suffered through a series of incidents, including a brain tumor, a stroke, and a serious automobile accident. *Id.* at ¶ 22. These events left Plaintiff with both physical and mental disabilities, including permanent paralysis of her right hand and difficulty processing new information. *Id.* at ¶ 22.

In August 2007, Plaintiff enrolled in a Master's program at the Hunter College School of Education (the "Master's Program"). *Id.* at ¶ 23. Plaintiff sought to obtain a Master of Special Education, which is a prerequisite for certification to teach special education in New York's public schools. *Id.* at ¶ 23. In recognition of Plaintiff's disabilities, Hunter College's School of Education made several accommodations for Plaintiff when she enrolled in the Master's Program, such as providing a notetaker and allowing her additional time to complete exams. *Id.*

at ¶ 25. Plaintiff completed 51.0 credits of graduate work in nineteen courses between August 2007 and December 2010 accruing a cumulative GPA of 3.68. *Id.* at ¶ 24.

During the fall semester of 2009, Plaintiff enrolled in a Student Teaching Seminar led by Defendant Gumanow. *Id.* at ¶ 26. The Student Teaching Seminar required the students to observe and ultimately co-teach a special education class with and under the supervision of a certified teacher. *Id.* at ¶ 28. It was expected that by the end of the semester, students in the seminar would be responsible for two full days of instruction and activities in their special education classrooms each week. *Id.* Students' grades in the course were to be based, *inter alia*, on an evaluation of their lesson plans, three observations of their teaching activities, a video clip demonstration, and a book review. *Id.* at ¶ 33. Plaintiff sought out and secured an opportunity to conduct her student teaching in a combined fourth and fifth grade special education class taught by Lisa Roerden at the Henry Gradstein School, Public School 166 ("P.S. 166"), in Long Island City, New York. *Id.* at ¶¶ 35–36.

Defendant Roberts, a CUNY instructor, was assigned as Plaintiff's student teaching field supervisor. *Id.* at ¶¶ 8, 38. During and after her observations of Plaintiff's teaching, Plaintiff alleges that Ms. Roberts had several conversations with Ms. Roerden about Plaintiff's work. *Id.* at ¶¶ 48–49. In these conversations, according to the Complaint, Ms. Roberts expressed her belief that Plaintiff should not be a teacher because of her disabilities. *Id.* at ¶ 50. Plaintiff also alleges that Ms. Roberts asked Ms. Roerden questions about whether and how Plaintiff's disabilities affected her work, including whether Ms. Roerden prepared Plaintiff's lesson plans for her, whether Plaintiff's disabilities had ever caused her to be violent with the students, and whether Ms. Roerden thought that Plaintiff should not be a teacher in light of her disabilities. *Id.*

—3—

at ¶ 51. According to the Complaint, Ms. Roerden disagreed with Ms. Roberts's concerns and assessment of Plaintiff's classroom performance. *Id.* at ¶ 59.

After Ms. Roberts's first observation of Plaintiff's teaching performance, Ms. Roberts awarded Plaintiff a "B-" grade. *Id.* at ¶ 42. Following the second and third observations, however, Ms. Roberts awarded Plaintiff "F" grades. *Id.* at ¶ 45. Plaintiff alleges that Ms. Roberts also shared her beliefs and opinions to Defendant Gumanow that Plaintiff should not become a teacher because of her disabilities. *Id.* at ¶ 56. By contrast, Ms. Roerden submitted a positive written evaluation of Plaintiff's performance as a student teacher. *Id.* at ¶ 60. Ms. Roerden assessed Plaintiff as either "proficient" or "exemplary" in every category she evaluated. *Id.* Plaintiff alleges that her peers reviewed a video of her teaching performance and found her teaching to be of a high quality. *Id.* at ¶¶ 61–63.

Because of the poor grades Plaintiff received from Ms. Roberts on the second and third observations, she received an overall grade of "C" in the seminar. *Id.* at ¶ 73. In the Master's Program, a "C" is considered a failing grade.[2] *Id.* at ¶ 34. As a result, Plaintiff lost her academic scholarship for individuals with disabilities, which she had been receiving from the New York State Department of Education. *Id.* at ¶¶ 75–76. Plaintiff alleges that was precluded from attaining a Master's degree and certification to teach, and was therefore unable to commence her intended career as a special education teacher. *Id.* at ¶ 77. According to the Complaint, upon a review of Plaintiff's classmates' performances,[3] Plaintiff claims that she can prove that Ms. Roberts's evaluation of her work was disproportionately negative compared to the evaluations of her classmates who were not suffering from disabilities. *Id.* at ¶ 70.

---

[2] For this reason, throughout this Opinion, the Court refers to Plaintiff's "C" grade as a "failing" grade.

[3] The Complaint claims that a review of Plaintiff's seminar classmates' written evaluations and video-and/or audio-recorded observations will sufficiently prove the similarities between Plaintiff and her classmates. Compl. at ¶ 70.

Plaintiff appealed her grade in the seminar to the Hunter College Grade Appeals Committee (the "College Committee"), and appeared before that body to express her belief that Ms. Roberts had discriminated against her because of her disabilities. *Id.* at ¶ 78. Although no representative of the Master's Program appeared to rebut Plaintiff's allegations, the College Committee considered and denied her appeal. *Id.* Plaintiff then appealed the College Committee's decision to the Grade Appeals Committee of the Hunter College Senate (the "Senate Committee"), expressing her belief that she had been the subject of discrimination due to her disabilities. *Id.* at ¶¶ 79–80. Again, no representative from the Master's Program appeared. *Id.* at ¶ 83. As a result, the Chair of the Senate Committee, Defendant Michael Schleifer, wrote that the Committee was "left [with] no choice but to accept the student's assertions as stated." *Id.* at ¶ 88. Despite this conclusion, the Committee declined to raise Plaintiff's grade, instead offering her an opportunity to repeat the seminar. *Id.*

Plaintiff filed this action against Defendants on July 28, 2011, alleging Defendants discriminated against her because of her disabilities, in violation of the Fifth and Fourteenth Amendments to the Constitution, the ADA, § 504 of the Rehabilitation Act, and §§ 1983 and 1985. Currently pending before the Court is Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

## ANALYSIS

Defendants now move this Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), arguing that CUNY and its officials are immune from suit under the Eleventh Amendment. In addition, Defendants ask this Court to dismiss all of Plaintiff's claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The Court agrees that the Eleventh Amendment bars Plaintiff's constitutional claims against CUNY, her claims against the Individual Defendants for monetary damages under § 1983, and her claims under the ADA. Those claims are dismissed on grounds of sovereign immunity. As § 1983 provides a remedy for Plaintiff's alleged constitutional violations, her claims arising directly under the Fourteenth Amendment against the Individual Defendants are also dismissed. Furthermore, Plaintiff concedes that her claim under § 1985 is not viable, Pl.'s Br. at 25, and that claim is dismissed in its entirety without further consideration. Lastly, Plaintiff has failed to state a claim for violations of either the Constitution or federal law. The Complaint is dismissed.

## I.    Eleventh Amendment Immunity

### A. Legal Standard

As an initial matter, CUNY contends this Court lacks subject matter jurisdiction to hear Plaintiff's claims against it and its officials because it has sovereign immunity from such suits under the Eleventh Amendment. "Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008); *see also Natarelli v. VESID Office*, 420 F. App'x 53, 54 (2d Cir. 2011) (affirming the dismissal of a Title II claim on Eleventh Amendment grounds pursuant to Fed. R. Civ. P. 12(b)(1)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison*, 547 F.3d at 170. In general, "[t]he court must take all facts alleged in the complaint as true . . . but jurisdiction must be shown affirmatively, and that showing is not made

by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (internal citation and quotations omitted).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. Although the Eleventh Amendment does not explicitly bar suits against a state by its own citizens, it is well established that a non-consenting state is immune from suits brought by its own citizens in federal court. *Clissuras v. City Univ. of New York*, 359 F.3d 79, 81 (2d Cir. 2004) (per curiam) (citing *Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001)). This immunity extends not only to the state itself, but also to entities considered "arms of the state," *id.* (quoting *McGinty v. New York*, 251 F.3d 84, 95 (2d Cir. 2001)), as well as, in appropriate circumstances, state officials acting in their official capacities, *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). "This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

However, "[s]tate sovereign immunity is not absolute." *In re Deposit Ins. Agency*, 482 F.3d at 617. Congress may, by statute, abrogate state immunity and subject the states to suit provided that (1) its intention to do so is "unequivocably expressed" and (2) the "legislation is enacted pursuant to a valid grant of constitutional authority." *Id.* (quoting *Tennessee v. Lane*, 541 U.S. 509, 517 (2004)) (internal quotations omitted). In addition, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *Id.* (citing *Edelman*, 415 U.S. at

677); *see also Ex parte Young*, 209 U.S. 123 (1908). This Court now considers whether any of Plaintiff's claims fall within these exceptions.

### B. Plaintiff's Claims Against CUNY

#### 1. *Constitutional Claims*

Plaintiff alleges that CUNY's conduct violated the Fifth and Fourteenth Amendments of the United States Constitution. Compl. ¶¶ 93–96. These claims are barred by the Eleventh Amendment. The Second Circuit has decisively held that CUNY and its senior colleges, like Hunter College, are "arms of the state," which are immune from suit under the Eleventh Amendment. *Clissuras*, 359 F.3d at 83; *see also Jackson v. City Univ. of New York*, No. 05-Civ.-8712, 2006 WL 1751247, at *2 (S.D.N.Y. June 23, 2006) (Rakoff, J.). And neither of the aforementioned exceptions—statutory abrogation or prospective injunctive relief from a state official—applies to a direct constitutional claim brought directly against a state entity. *Santiago v. New York State Dept. of Corr. Services*, 945 F.2d 25, 30–32 (2d Cir. 1991) (holding that the Fourteenth Amendment was not an unequivocal expression of congressional intent to abrogate states' immunity and reversing district court's rejection of New York's Eleventh Amendment argument); *Garcia v. Paylock*, 13-CV-2868, 2014 WL 298593, at *3 (E.D.N.Y. Jan. 28, 2014) (Matsumoto, J.) ("Plaintiff's equal protection claims also may not be brought directly under the Fourteenth Amendment because the State has not waived its immunity [nor] had that immunity abrogated pursuant to that constitutional amendment."). Plaintiff's constitutional claims in the First Cause of Action against CUNY are accordingly dismissed.

### 2. *Statutory Claims*

#### a. Title II of the Americans with Disabilities Act

Plaintiff also alleges that CUNY violated Title II of the Americans with Disabilities Act ("ADA"). Compl. at ¶¶ 97–105. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The statute, which was enacted pursuant to Congress's enforcement power under § 5 of the Fourteenth Amendment,[4] contains "an unequivocal expression of Congress's intent to abrogate state sovereign immunity" and explicitly "authorizes suits by private citizens for money damages against public entities." *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. §§ 12133, 12202).

Although the scope of Congress's power under § 5 of the Fourteenth Amendment has been the subject of repeated dispute, the Supreme Court held in *United States v. Georgia* that Congress validly abrogated the states' sovereign immunity with respect to certain claims under Title II of the ADA, including, at a minimum, claims for "conduct that *actually* violates the Fourteenth Amendment." 546 U.S. at 159. The Court established a three-step process for determining whether Congress has validly abrogated a state's sovereign immunity in the context of a particular Title II claim: a court must "determine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Id.*; *see also Mary Jo C. v. New York*

---

[4] "The Congress shall have power to enforce, by appropriate legislation, the provisions of [the Fourteenth Amendment]." U.S. Const. amend. XIV, § 5.

*State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013), *cert. dismissed*, 133 S. Ct. 2823 (2013). In essence, if a plaintiff is able to state a claim for both a Title II violation and a violation of the Fourteenth Amendment, then the State's sovereign immunity from suit is abrogated.

In this case, as illustrated below, the Court finds that Plaintiff has failed to state a claim that CUNY violated either Title II or her rights under the Equal Protection Clause of the Fourteenth Amendment. *See infra* Sections II.B.2, II.C. Consequently, the question of whether Congress validly abrogated CUNY's sovereign immunity with respect to Plaintiff's Title II claim is not ripe for adjudication under this Complaint.

### b. Section 504 of the Rehabilitation Act

Plaintiff further alleges that CUNY violated § 504 of the Rehabilitation Act of 1973. Compl. at ¶ 106–13. Section 504 of the Rehabilitation Act of 1973 prohibits a program that receives federal funds from discriminating against an individual on the basis of his or her disability. 29 U.S.C. § 794(a). Congress enacted the Rehabilitation Act pursuant to its authority under the Constitution's Spending Clause in Article I. *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001) (citing U.S. Const. art. I, § 8, cl. 1). When acting pursuant to this authority, Congress may provide funds to the states and may require that the states, as a condition of receiving those funds, waive their sovereign immunity. *Id.* (citing *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686–87 (1999)). It is undisputed that, in enacting § 504, Congress unequivocally expressed its "intent to condition acceptance of federal funds on a state's waiver of its Eleventh Amendment immunity." *Garcia*, 280 F.3d at 113 (citing 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal

court for a violation of Section 504 of the Rehabilitation Act of 1973.")). To be effective, a "waiver of sovereign immunity requires an '*intentional* relinquishment or abandonment of a *known* right or privilege.'" *Id.* at 114 (quoting *College Savings Bank*, 527 U.S. at 682) (emphasis added).

The Second Circuit's decision in *Warren v. Goord* dictates that post-*Garcia*, a district court must determine whether New York waived its sovereign immunity by accepting federal funds via the Rehabilitation Act during the time period in dispute. 81 F. App'x 400, 401 (2d. Cir. 2003). Here New York's acceptance of federal funds under § 504 during the period at issue constituted a knowing waiver of New York's sovereign immunity.

The relevant analysis begins with *Garcia*. In *Garcia*, a plaintiff with a learning disability alleged that a New York state medical school had violated the ADA and § 504 by dismissing him from its medical program in 1995. *Id.* at 103–05. At that time, it was common wisdom that the ADA, which proscribes essentially the same conduct as § 504, had already abrogated the state's sovereign immunity. *Id.* at 114. Because New York believed its sovereign immunity with respect to disability claims was already lost, the Second Circuit held that New York could not have knowingly waived any immunity by accepting federal funds under § 504. *Id.* Nevertheless, the Second Circuit observed that if there had been "a colorable basis for the state to suspect that an express congressional abrogation is invalid, then the acceptance of funds conditioned on the waiver might properly reveal a knowing relinquishment of sovereign immunity." *Id.* at 114 n.4. Acceptance of § 504 funds under the circumstances posited by the Circuit would constitute a knowing waiver because the state would be faced with a consequential decision: either accept the funds and waive immunity over § 504 disability claims *or* reject the funds and maintain immunity for at least some disability claims.

Following *Garcia*, the Supreme Court issued two decisions invalidating Congress' abrogation of state immunity under the ADA. First, in *Bd. of Trustees of Univ. of Alabama v. Garrett*, the Court held that states are immune from damage suits under Title I of the ADA. 531 U.S. 356 (2001). Second, in *United States v. Georgia*, the Court held that Title II of the ADA only partially abrogated state sovereignty, concluding that the states maintain residual immunity for claims of misconduct that violated Title II but not the Fourteenth Amendment. 546 U.S. at 159. Consequently, there is now "a colorable basis for [New York state] to suspect that an express congressional abrogation [in the ADA] is invalid" and the state has at least partial immunity from suit for some disability claims under the ADA. *Garcia*, 280 F.3d at 114 n.4.

Accordingly, New York's continued acceptance of federal funds under § 504 after *Garcia* constitutes a knowing waiver of sovereign immunity under that provision. *Warren*, 81 F. App'x at 401 (vacating the district court's decision because it did not analyze, in light of *Garcia*, whether New York had waived sovereign immunity under the Rehabilitation Act for the time period in question); *Forziano v. Indep. Grp. Home Living Program, Inc.*, 13-CV-0370, 2014 WL 1277912, at *7 (E.D.N.Y. Mar. 26, 2014) (Wexler, J.) (holding that post-2001 "New York was clearly subject to suit under Section 504 of the Rehabilitation Act"); *Keitt v. New York City*, 882 F. Supp. 2d 412, 425 (S.D.N.Y. 2011) (Daniels, J.) ("Rehabilitation Act claims are not barred by the 11th Amendment because New York has waived sovereign immunity with respect to those claims."); *see also Ali v. Hogan*, No. 9:12-CV-0104, 2013 WL 5503321, at *11 (N.D.N.Y. Sept. 12, 2013) *report and recommendation adopted*, 2013 WL 5466302 (N.D.N.Y. Sept. 30, 2013) ("The State of New York has waived its right to sovereign immunity under the Eleventh Amendment to claims arising under the Rehabilitation Act."); *Alexander v. State Univ. of New York at Buffalo*, 932 F. Supp. 2d 437, 443 (W.D.N.Y. 2013) ("[T]he Court is persuaded that New

—12—

York, by accepting federal funds after the *Garcia* decision, has waived sovereign immunity for damage suits brought under [S]ection 504 of the Rehabilitation Act of 1973."); *Scaggs v. New York Dep't of Educ.*, No. 06-CV-0799, 2007 WL 1456221 (E.D.N.Y. May 16, 2007) (Bianco, J.) ("[I]f a state accepts federal funds under the Rehabilitation Act *after Garcia,* it necessarily follows from that decision that the state has knowingly waived its Eleventh Amendment sovereign immunity with respect to Section 504 claims that arose (as here) after the *Garcia* decision.") (emphasis in original); *Mutts v. Southern CT State Univ.,* No. 04–CV–1746, 2006 WL 1806179, at *4 (D. Conn. Jun. 28, 2006) (same); *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 414 (S.D.N.Y. 2006) (Sweet, J.) ("[A]fter *Garrett,* New York's continued acceptance of federal funds necessarily constituted a valid waiver of sovereign immunity because New York could no longer rely on a belief that Title II clearly constituted a valid abrogation of sovereign immunity."); *Blasio v. New York State Dep't of Corr. Servs.,* No. 04-CV-653S, 2005 WL 2133601, at *3 (W.D.N.Y. Aug. 31, 2005) ("By continuing to accept federal funds after *Garcia,* however, New York knowingly waived its immunity for Rehabilitation Act claims, which are based on post-*Garcia* events."); *Cardew v. New York State Dep't of Corr. Servs.,* No. 01-Civ.-3669, 2004 WL 943575, at *8 (S.D.N.Y. Apr.30, 2004) (Jones, J.) ("New York appears to have continued to accept federal funds, and thus, in the wake of *Garcia,* has waived its sovereign immunity from suit under Section 504 of the Rehabilitation Act."). In light of the Circuit's directive to examine whether New York waived sovereign immunity under the Rehabilitation Act for the time period in question, the Court joins other district courts in this Circuit in holding that New York knowingly waived sovereign immunity through its acceptance of federal funds under § 504.

Plaintiff alleges that CUNY discriminated against her based on her disabilities in 2009 and 2010—after the decisions in *Garcia*, *Garrett*, and *Georgia*—and thus at a time when CUNY's continued receipt of federal funds constituted a valid waiver of New York's residual state sovereign immunity. *See Warren*, 81 F. App'x at 401. Consequently, Plaintiff's claim against CUNY under § 504 of the Rehabilitation Act for injunctive relief and money damages is not barred by the Eleventh Amendment. CUNY's motion to dismiss the Third Cause of Action on Eleventh Amendment grounds is denied.

### 3. CUNY's Immunity

In summary, CUNY is immune from claims brought directly under the Fifth and Fourteenth Amendments of the Constitution and the Complaint's First Cause of Action is dismissed against CUNY. Additionally, Plaintiff's failure to state a claim for a violation of either Title II or the Equal Protection Clause renders the question of immunity under the ADA premature. Finally, CUNY is subject to suit under § 504 of the Rehabilitation Act, in light of New York's waiver of sovereign immunity through its acceptance of federal funds. Accordingly, CUNY's Fed. R. 12(b)(1) motion to dismiss the Third Causes of Action is denied.

### C. Plaintiff's Claims Against the Individual Defendants

#### 1. Prospective Injunctive Relief under Ex Parte Young

Plaintiff brings four claims against the Individual Defendants in their official capacities, including one constitutional claim and three statutory claims under Title II of the ADA, § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. Insofar as Plaintiff requests prospective injunctive relief, all of these claims fit squarely within the *Ex Parte Young* exception and are not barred by the Eleventh Amendment.

The *Ex Parte Young* doctrine ensures the protection of individuals' federal rights by allowing suits for prospective injunctive relief against state officials in their official capacity. It is beyond dispute that *Ex Parte Young* actions may be maintained for violations of Title II of the ADA, § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (holding that Title II ADA suits and Rehabilitation Act suits for prospective injunctive relief may be brought under *Ex Parte Young* against state officers in their official capacities); *Dube v. State Univ. of New York*, 900 F.2d 587, 595 (2d Cir. 1990) (permitting, under *Ex Parte Young*, a § 1983 suit for prospective injunctive relief against state officers in their official capacities). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (internal quotations omitted); *see also In re Deposit Ins. Agency*, 482 F.3d at 618.

Plaintiff's allegations—that CUNY professors, administrators, and officials violated her rights to due process and the equal protection of the law by allegedly discriminating against her on the basis of her disabilities—satisfy the first prong of this test.[5] A violation is deemed ongoing when its detrimental impact continues into the present. *See Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985) (state employee's suit for reinstatement was not barred by the Eleventh

---

[5] The Individual Defendants dispute whether their actions deprived Plaintiff of any constitutionally protected interest. *See* Defs.' Br. at 8–9. Because this defense challenges the merits of Plaintiff's claim, it is more properly addressed in the section regarding the sufficiency of Plaintiff's allegations. *See infra* Section II.B.2; *Verizon Maryland*, 535 U.S. at 646 (declining to consider, as part of the *Ex Parte Young* analysis, whether defendants had *actually* violated federal law because "[a]n *allegation* of an ongoing violation of federal law . . . is ordinarily sufficient" to invoke the doctrine and "inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim").

Amendment even though the alleged violation—unlawful termination—took place in the past); *Malkan v. Mutua*, No. 12-CV-236, 2012 WL 4722688, at \*7–8 (W.D.N.Y. Oct. 3, 2012) (Arcara, J.) (derogatory information in personnel file constitutes an ongoing violation, separate from plaintiff's right to reinstatement); *see also Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) (negative information contained in student record constituted an ongoing violation, and was therefore not moot, where that information jeopardized student's future employment or college career); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 494-96 (10th Cir. 1998) (defendants' refusal to admit plaintiff to medical school constituted an ongoing violation because plaintiff continued to be excluded from the school of her choice). Plaintiff alleges that the discrimination she experienced has prevented her from graduating with a Master's degree, receiving certification as a special education teacher, and commencing her intended career. Compl. at ¶ 77. These allegations are sufficient to demonstrate ongoing harm.[6]

Likewise, Plaintiff's requested injunctive relief—that the Individual Defendants change Plaintiff's grade and permit her to continue her studies at Hunger College—is purely prospective, as it would require state officials to take future action to prevent present and future harm. *See Flint*, 488 F.3d at 825. The fact that this injunction also remedies a past harm does not "render[] an otherwise forward-looking injunction retroactive. If it did, the rule allowing prospective relief would be substantially undermined because the need for prospective relief often arises out of a past injury." *Russell v. Dunston*, 896 F.2d 664, 668 (2d Cir. 1990) (holding that reinstatement is

---

[6] CUNY's offer to allow Plaintiff to retake the seminar does not change this analysis, since the failing grade would remain on Plaintiff's transcript and would continue to affect her future employment and academic opportunities. *See Flint*, 488 F.3d at 824; *Malkan*, 2012 WL 4722688, at \*7–8 (derogatory information in personnel file constitutes an ongoing violation, separate from plaintiff's right to reinstatement). Moreover, because Plaintiff lost her scholarship, she would be forced to pay tuition and other educational costs out-of-pocket or take out loans to retake the seminar, further exacerbating the violation and its effects. *See McGuire v. Switzer*, 734 F. Supp. 99, 108 (S.D.N.Y. 1990) (where student was still making payments on law school debt that he had incurred because of allegedly discriminatory policy, student's request for reimbursement constituted prospective relief).

prospective even though it contemplated "changing the result of an action . . . already taken") (citing *Milliken v. Bradley*, 433 U.S. 267 (1977)); *Buchwald*, 159 F.3d at 495 n.5 ("The existence of a past harm does not convert a prospective injunction into retrospective relief barred under the Eleventh Amendment."); *see also Elliott v. Hinds*, 786 F.2d 298, 301–02 (7th Cir. 1986) (expungement of personnel records and reinstatement are prospective remedies)). Consequently, Plaintiff's constitutional and statutory claims for injunctive relief against the Individual Defendants in their official capacities are not barred by the Eleventh Amendment.[7]

### 2. *Monetary Damages*

Plaintiff also seeks monetary damages under Title II of the ADA, § 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. A suit against a state official in his or her official capacity for monetary damages is treated as a suit against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Shabazz v. Coughlin*, 852 F.2d 697, 700 (2d Cir. 1988) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Consequently, the Eleventh Amendment shields such officers to the same extent that it shields the state. *Garcia*, 280 F.3d at 107; *Stanescu v. State of Conn., Second Injury Fund*, 112 F.3d 505 (2d Cir. 1997). By the same token, "[t]he only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *see also Jackler v. Byrne*, 658 F.3d 225, 244 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1634 (2012).

With respect to Plaintiff's claims for monetary damages against the Individual Defendants alleging a violation of § 504 of the Rehabilitation Act, this claims are not barred by

---

[7] This Court disagrees with Defendants' characterization of Plaintiff's requested relief as declaratory. Plaintiff's request for the Court to issue an injunction requiring Defendants to change Plaintiff's grade is an equitable remedy.

the Eleventh Amendment. Because this Court has already determined that New York waived its immunity under § 504, it follows that Plaintiff may maintain her suit for damages against New York state officials for violations of these statutes.

As with the Title II analysis above, Plaintiff has failed to state a claim for a violation under either Title II or the Equal Protection Clause, and the Individual Defendants are immune from ADA liability. Additionally, Plaintiff's claim against the Individual Defendants for monetary damages under § 1983 is barred by the Eleventh Amendment. It is well settled that Congress did not abrogate the States' sovereign immunity by enacting § 1983 and New York has not waived its immunity. *Dube*, 900 F.2d at 594 (citing *Quern v. Jordan*, 440 U.S. 332, 340-42 (1979)). Consequently, Plaintiff's § 1983 claim for monetary damages against the Individual Defendants in their official capacities is barred by the Eleventh Amendment and must be dismissed. *See Amaker v. New York State Dept. of Corr. Services*, 435 F. App'x 52, 54 (2d Cir. 2011) (affirming dismissal of § 1983 claims against state officials in the official capacity); *Browdy v. Karpe*, 131 F. App'x 751, 752-53 (2d Cir. 2005) (same).

## II.    Failure to State a Claim

### A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A sufficiently pled complaint must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). If a complaint merely offers labels and conclusions, a formulaic recitation of the elements, or "naked assertions devoid of further factual enhancement,"

it will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). The Court must accept all factual allegations in the complaint as true, but is "not bound to accept as true legal conclusion couched as factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Legal conclusions must be supported by factual allegations. *Iqbal*, 556 U.S. at 678; *Pension Ben. Guar.*, 712 F.3d at 717.

## B. Section 1983 Claims Against the Individual Defendants

Plaintiff's Fourth Cause of Action for violations of 42 U.S.C. § 1983 alleges that the Individual Defendants[8] deprived Plaintiff of rights secured by the Constitution and laws of the United States by (1) "giving, and upholding, a failing grade that was unjustifiably conferred based solely on the defendants' animus against Plaintiff because of her disabilities" and (2) "creat[ing] a custom, policy, and practice whereby professors are facilitated and encouraged to assign arbitrary grades that are readily subject to influence by unlawful animus." Compl. at ¶¶ 118-19.

Defendants seek to dismiss this cause of action by arguing that Plaintiff failed to identify a specific underlying right on which to base her § 1983 claim. The Court finds this position without merit as Plaintiff's First Cause of Action, incorporated in paragraph 114 of the Complaint, allege various violations of the Constitution. It would be an absurd reading of the Complaint and Plaintiff's statement in paragraph 118 in the § 1983 Cause of Action—"[the Individual Defendants] deprived Plaintiff of the rights, privileges, and immunities secured by the

---

[8] Plaintiff has sufficiently alleged that all time the Individual Defendants were acting under color of state law as required to state a claim under § 1983. *See* Compl. at ¶ 117.

United States Constitution and laws"[9] —to hold that she has not alleged the violation of an underlying right to anchor her § 1983 claim.

Plaintiff's primary theory of liability under § 1983 alleges that the Defendants deprived Plaintiff of her rights under the Due Process and Equal Protection clauses of the Constitution through the issuance and affirmation of a failing grade based solely upon the animus of her evaluator, Defendant Roberts. As discussed below, Plaintiff has failed to state a claim alleging a violation of either the Due Process Clause or Equal Protection Clause, and these § 1983 claims are dismissed without prejudice. Plaintiff's secondary theory of liability is discussed in Section II.B.4, *infra*.

### 1. Due Process

The Fourteenth Amendment's Due Process Clause instructs that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. Plaintiff has alleged that the Individual Defendants violated both her procedural and substantive Due Process rights under the Fifth and Fourteenth Amendments of the Constitution. Plaintiff does not specifically articulate the nature of each of her Due Process claims, but the Court can discern the following alleged violations:

---

[9] While "[§] 1983 provides a cause of action for violations of federal statutes as well as the Constitution[,]" the ADA and Rehabilitation Act create enforceable rights indicating that Congress did not intend "that plaintiffs [would] seek redress for violations of their ADA and Rehabilitation Act rights through the vehicle of § 1983." *Bartlett v. N.Y. State Bd. of Law Examiners*, 970 F. Supp. 1094, 1144-45 (S.D.N.Y. 1997) (Sotomayor, D.J.) *aff'd in part, vacated in part on other grounds*, 156 F.3d 321 (2d Cir. 1998) *cert. granted, judgment vacated on other grounds*, 527 U.S. 1031 (1999) and *aff'd in part, vacated in part*, 226 F.3d 69 (2d Cir. 2000); *Sinisgallo v. Town of Islip Hous. Auth.*, 865 F. Supp. 2d 307, 333 (E.D.N.Y. 2012) (Spatt, J.), *appeal withdrawn* (Aug. 23, 2012); *see also Chernoff v. City of New York*, 06-CV-2897, 2009 WL 816474, at *5 n.7 (E.D.N.Y. Mar. 26, 2009) (Sifton, J.) (expressing doubt that a § 1983 claim can be based on an ADA violation); *Credle-Brown v. Conn. Dep't of Children & Families*, 3:04-CV-1167, 2009 WL 1789430, at *1 (D. Conn. June 24, 2009) (Eginton, J.) (agreeing with Judge Sotomayor's decision in *Bartlett*).

(1) Plaintiff's Fifth Amendment rights were violated by the Individual Defendants;

(2) Plaintiff's procedural Due Process rights, under the Fourteenth Amendment, were violated by the Individual Defendants' ultimate adjudication that her seminar grade would not be changed;

(3) Plaintiff's substantive Due Process rights were violated because CUNY, through the Individual Defendants, breached its contract to act in good faith in its dealings with its students;

(4) Plaintiff's substantive Due Process rights were violated when the Individual Defendants prevented Plaintiff from pursuing her education; and

(5) Plaintiff's substantive Due Process rights were violated because the Individual Defendants prevented her from pursuing her chosen career.

### a. Fifth Amendment Claim

As a preliminary issue, Plaintiff has alleged that the Individual Defendants violated her rights under the Fifth Amendment of the Constitution, but "[t]he Fifth Amendment governs the conduct of the *federal* government and *federal* employees, and does not regulate the activities of state officials or state actors." *Viteritti v. Inc. Vill. of Bayville*, 831 F. Supp. 2d 583, 592 (E.D.N.Y. 2011) (Hurley, J.) (quoting *Cassidy v. Scoppetta*, 365 F. Supp. 2d 283, 286 (E.D.N.Y. 2005) (Irizarry, J.)) (emphasis in original) (internal quotations omitted). Therefore, any independent claim for a violation of the Fifth Amendment is hereby dismissed at the outset.[10]

---

[10] Despite the fact that the Complaint alleges violations of the "Fifth Amendment," Plaintiff's brief concedes that she "has never alleged an independent claim under the Fifth Amendment." Pl.'s Br. at 10. As explained above, any inference that such a claim exists is improper and hereby dismissed. *See* Section II.B.1.a.

b. Procedural Due Process Claim

To state a Fourteenth Amendment procedural due process claim, Plaintiff must allege that (1) CUNY officials' refusal to change her grade deprived her of either a "liberty" or "property" interest, *Bd. Of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978), and (2) the state's process was "constitutionally [in]adequate," *Zinermon v.. Burch*, 494 U.S. 113, 126 (1990).

Plaintiff alleges that CUNY's procedures for challenging her grade, as executed by the Individual Defendants, deprived her of a constitutional right to procedural Due Process. The procedures at CUNY included a hearing before the Hunter College Grade Appeals Committee (the "College Committee"), Compl. at ¶ 78, and a hearing with the Grade Appeals Committee of the Hunter College Senate (the "Senate Committee"), Compl. at ¶¶ 79-80. With no member of the Master's Program challenging Plaintiff's allegations during the proceedings, the Chair of the Senate Committee ultimately "accept[ed] the student's assertions as stated" and offered Plaintiff an opportunity to retake the class. *Id.* at ¶ 88. As noted, Plaintiff's grade was not changed as a result of CUNY's process. *Id.*

There is no question that Plaintiff has a "liberty" or "property" interest in her dealings with her state-run college as New York has recognized "an implied contract between [a public college] and its students." *Olsson v. Board of Higher Ed.*, 49 N.Y.2d 408, 414 (1980). "The essence of the implied contract is that an academic institution must act in good faith in its dealings with its students." *Id.* "Such an implied contract, recognized under state law, provides the basis for a property interest that would be entitled to constitutional protection." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991).

Nonetheless, Plaintiff has failed to allege that the process afforded to her by the CUNY officials was constitutionally inadequate. At its core, Plaintiff's appeal was an academic dispute:

—22—

a student asking the university bureaucracy to change her grade. The Supreme Court has been clear that there is no mandatory set of formal procedures required for challenging academic decisions. *Id.* at 89-90 (finding that academic challenges require less formalized procedures than disciplinary determinations); *cf. Goss v. Lopez*, 419 U.S. 565, 581 (1975) (holding that in *disciplinary* proceedings a student must "be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story"). The deference given to academic institutions is amplified at the highest levels of education as the "instruction becomes both more individualized and more specialized." *Horowitz*, 435 U.S. at 90 ("We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship.") Additionally, the operations of public schools are committed to the states and local authorities, and particular "care and restraint" is required for judicial interposition. *Id.*

In light of these guiding principles, the procedures offered by CUNY and its officials cannot be characterized as constitutionally inadequate. In fact, CUNY's procedures provided Plaintiff with a greater procedural opportunity to seek redress than the Constitution requires. Plaintiff was given two formalized proceedings in which she was able to present her case to appellate committees specializing in grade challenges. Although neither Roberts nor Gumanow fought Plaintiff's allegations before the committees, Plaintiff was given a full and fair opportunity to be heard before impartial adjudicators. And although Plaintiff did not receive the remedy she desired, the Senate Committee ultimately granted her a favorable outcome. Compl. at ¶ 88. Plaintiff's suggestion in her Complaint that she was entitled to "affirmative details of

—23—

[the committee's] findings[,]" *id.*, is unwarranted and asks for much more than the Constitution requires of academic proceedings, *see Horowitz*, 435 U.S.at 89–90.

Plaintiff was provided with more procedural safeguards than required by the Constitution during the academic appeal of her seminar grade and has therefore failed to state a claim for a violation of her procedural Due Process rights. Defendants' motion to dismiss Plaintiff's procedural Due Process claims is granted.

### c. Substantive Due Process Claims

To state a substantive Due Process claim, a plaintiff must establish that a protected liberty or property interest was infringed in an arbitrary or irrational manner that shocks the conscience. *See Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999); *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington v. Town Bd.*, 31 F.3d 1191, 1196 (2d Cir. 1994); *Fasciana v. Cnty. of Suffolk*, No. 13-CV-1885, 2014 WL 524466, at \*7 (E.D.N.Y. Feb. 7, 2014) (Seybert, J.). However, rights are only protected by substantive due process if they are fundamental or "implicit in the concept of ordered liberty." *Local 342*, 31 F.3d at 1196 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)); *Seymour's Boatyard, Inc. v. Town of Huntington*, No. 08-CV-3248, 2009 WL 1514610 (E.D.N.Y. June 1, 2009) (Gleeson, J.). "[W]here the alleged right ... cannot be considered so rooted in the traditions and conscience of our people as to be ranked as fundamental, notions of substantive due process will not apply." *Local 342*, 31 F.3d at 1196 (citing *Flores*, 507 U.S. at 303) (internal quotation marks omitted).

While Plaintiff's brief conflates substantive and procedural Due Process, three potential theories of substantive Due Process can be ascertained. The Court considers each potential basis for a constitutional violation in turn, but concludes that none of Plaintiff's theories can save the Complaint from Defendants' 12(b)(6) motion.

—24—

### i.     Substantive Due Process based on *Olsson*

To the extent that Plaintiff roots her substantive Due Process claim in New York's implied contract between students and public schools, *see Olsson*, 49 N.Y.2d at 414, there is no basis in law for such a claim. It is well-settled that when an alleged right is not fundamental, the protections of substantive due process do not apply. *Tessler v. Paterson*, 451 F. App'x 30, 32-33 (2d Cir. 2011) (quoting *Local 342*, 31 F.3d at 1196). "While property interests are protected by *procedural* due process even though the interest is derived from state law rather than the Constitution, *substantive* due process rights are created only by the Constitution." *Local 342*, 31 F.3d at 1196 (emphasis added); *cf. Branum*, 927 F.2d at 705 (considering New York's implied contract between students and public schools in the *procedural* due process context). The Second Circuit has held that "simple, state-law contractual rights, without more, are not worthy of substantive due process protection." *Tessler*, 451 F. App'x at 32-33 (citing *Local 342*, 31 F.3d at 1196) (internal quotations omitted); *see also Walker v. City of Waterbury*, 361 F. App'x 163, 165 (2d Cir. 2010).

As indicated by the preceding authority, the property right granted to Plaintiff as a public school student under New York law is a sufficient interest for a procedural Due Process claim, but does not hold weight as a fundamental right under the Fourteenth Amendment. *Handberry v. Thompson*, 446 F.3d 335, 352-53 (2d Cir. 2006) ("The Fourteenth Amendment does not protect a public education as a substantive fundamental right.") (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973); *Plyler v. Doe*, 457 U.S. 202, 221 (1982)). Plaintiff's substantive Due Process claim pursuant to New York's implied contract between students and public schools has no merit and is dismissed.

### ii.    Substantive Due Process based on a Right to Pursue an Education

"The right to public education is not fundamental;" accordingly, "there is no substantive due process right to public education." *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 217-18 (2d Cir. 2012). Without a fundamental right on which to anchor Plaintiff's claim that she was denied a right to pursue her education, Plaintiff's substantive Due Process claim on this basis has no merit and is dismissed.

### iii.    Substantive Due Process based on a Right to Pursue a Chosen Career

Plaintiff also asserts that she was denied a substantive Due Process right by the Individual Defendants because their actions have prevented her from asserting her liberty interest in pursuing her chosen profession as a teacher. "While a person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest, courts in the Second Circuit have consistently held one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest." *Toussie v. Cnty. of Suffolk*, 806 F. Supp. 2d 558, 579-80 (E.D.N.Y. 2011) (Seybert, J.) (citing *Jaeger v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, No. 96–CV–9336, 1997 WL 625006, at *1 (2d Cir. Oct. 9, 1997); *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (McMahon, J.); *Schultz v. Inc. Vill. of Bellport*, No. 08–CV–0930, 2010 WL 3924751, at *7 (E.D.N.Y. Sept. 30, 2010) (Bianco, J.)).

Here, the Individual Defendants did not deny Plaintiff all opportunities to practice in her chosen profession. It is undeniable that Defendants' actions made it more difficult for Plaintiff to attain her goal as she now has a failing grade on her resume, lost her scholarship, and was only offered to repeat a course for which she allegedly should have been awarded credit. However, the ultimate resolution of Plaintiff's grade appeal was an opportunity to retake the student

teaching seminar. *See Sacco v. Pataki,* 114 F. Supp. 2d 264, 273 (S.D.N.Y .2000) (Cedarbaum, J.) (holding plaintiffs are not deprived of a liberty interest because "they cannot have the best job in their field"); *Empire Transit Mix, Inc. v. Giuliani,* 37 F.Supp.2d 331, 336 (S.D.N.Y.1999) (Kaplan, J.) (holding City's termination of plaintiff's contracts and publishing negative news report did not constitute the deprivation of a liberty interest even though "a significant part of [plaintiff's] business ha[d] involved projects for the City"). As Plaintiff was, in fact, capable of reenrolling in her course and obtaining the final credits needed for her Master's degree, the Individual Defendants did not fully preclude Plaintiff from engaging in her chosen profession. Plaintiff has failed to state a substantive Due Process claim based on her right to pursue a teaching career.

Ultimately, Plaintiff has not sufficiently stated a claim for the violation of any substantive Due Process right and to the extent that Plaintiff's § 1983 claim relies on the Due Process Clause, it is dismissed.

### 2. Equal Protection

Plaintiff has alleged that the Individual Defendants violated her rights under the Equal Protection Clause of the Fourteenth Amendment by either awarding her a failing grade solely because of her disabilities or ratifying that grade. Plaintiff has failed to sufficiently plead that there was a high degree of similarity between her and her classmate and has, therefore, failed to state a claim against the Individual Defendants for violating her rights under the Equal Protection Clause.

"The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). In evaluating an equal protection claim, the Court must first determine the appropriate level of scrutiny to apply.

Unless state action burdens a suspect class or impinges upon a fundamental right, that action is subject to rational basis review. *See Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). Persons with disabilities are not a suspect class and review of their equal protection claims are subject to rational basis review. *See City of Cleburne*, 473 U.S. at 442-47. Under rational basis review, a court must uphold the state action "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, 509 U.S. at 320.

To prevail on her equal protection claim as a class-of-one plaintiff, Plaintiff must show that "[1] she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2000). Plaintiff's burden is a tall one and she must show an extremely high degree of similarity between herself and her fellow students. *See, e.g., Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010). Plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Ruston*, 610 F.3d at 60). Additionally, "[t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that he [or she] was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiff has not met this burden.

Plaintiff failed to plead adequately that there was a high degree of similarity between she and the other seminar students. *See, e.g.*, Compl. at ¶¶ 27-33, 40-41, 70. While Plaintiff has

alleged that all students in the seminar were subject to the same curriculum, syllabus, grading requirements, mandatory student teaching, and overall course instructor, *Id.* at ¶¶ 27-33, she has not brought forward specific allegations to transform her conclusory statement that she can prove the high degree of similarity required into a cognizable class-of-one claim. *Rafano v. Patchogue-Medford Sch. Dist.*, 06-CV-5367, 2009 WL 789440, at *6 (E.D.N.Y. Mar. 20, 2009) (Bianco, J.) (finding on summary judgment that plaintiff did not "provide any other evidentiary support to his conclusory statement" that there was a high degree of similarity between plaintiff and other disabled students). Plaintiff has made the conclusory claim that upon a review of her classmates' performances, it will be revealed that Defendant Robert's evaluations were disproportionately negative as compared to students who did not suffer from disabilities. *Id.* at ¶ 70. However, "naked assertions devoid of further factual enhancement," will not survive a motion to dismiss. *Id.* (quoting *Twombly*, 550 U.S. at 557). Plaintiff's hypothetical and speculative claim that an investigation into her classmates' performances would reveal that they were similarly situated does not give rise to a plausible inference that "the similarity in circumstances and difference in treatment" between Plaintiff and her classmates is "sufficient to *exclude the possibility* that the defendants acted on the basis of a mistake." *Fortress Bible Church*, 694 F.3d at 222 (emphasis added).

At this interval in the litigation, Plaintiff has failed to sufficiently state a claim for a violation of her rights under the Equal Protection Clause. Plaintiff has not adequately alleged the extremely high degree of similarity between herself and her fellow students to survive a motion to dismiss and her Equal Protection claim fails. *See Ruston*, 610 F.3d at 59–60.

### 3. *Plaintiff's Direct Constitutional Claims*

As § 1983 provides a remedy for Plaintiff's alleged constitutional violations, an implied cause of action grounded directly in the Constitution is not available. *Pauk v. Bd. of Trustees of City Univ. of New York,* 654 F.2d 856, 865 (2d Cir.1981); *Lehman v. Doe,* 66 F. App'x 253, 255 (2d Cir. 2003). Accordingly, Plaintiff's First Cause of Action against the Individual Defendants directly alleging violations of the Fourteenth Amendment is dismissed.

### 4. *Custom, Policy, or Practice*

Plaintiff's secondary theory of § 1983 liability, alleging a custom, policy, or practice of giving arbitrary grades, has not been established in the pleadings and amounts to nothing more than a legal conclusion. *See* Compl. at ¶ 119. If a complaint merely offers labels and conclusions, a formulaic recitation of the elements, or "naked assertions devoid of further factual enhancement," it will not survive a motion to dismiss. *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). Legal conclusions must be supported by factual allegations. *Id.* Accordingly, Plaintiff has failed to state a claim for her secondary theory of § 1983 liability and Defendants' motion to dismiss Plaintiff's Fourth Cause of Action is hereby granted.

### C. Title II & Rehabilitation Act Claims Against All Defendants

Plaintiff alleges that the Defendants violated her rights under Title II of the ADA and § 504 of the Rehabilitation Act by unjustifiably awarding and ratifying a failing grade as a result of unlawful animus based on her disabilities. Compl. at ¶¶ 104-05, 112-13. As conceded in her opposition brief, Plaintiff does not claim that Defendants failed to accommodate her disability. Pl.'s Br. at 23–24. Plaintiff's Title II and § 504 claims rest solely on a disparate treatment theory. *Id.* Nonetheless, Plaintiff has failed to provide "more than an unadorned, the-

defendant[s]-unlawfully-harmed-me accusation[s]" and therefore her claims must be dismissed. *See Pension Ben. Guar. Corp.,* 712 F.3d at 717 (quoting *Iqbal,* 556 U.S. at 678).

To state a claim under the statutes, Plaintiff must demonstrate that (1) she is a "qualified individual" with a disability, (2) that CUNY and the Individual Defendants are subject to the statutes, and (3) that Plaintiff was denied the opportunity to participate in or benefit from Defendants' services, programs or activities, or was otherwise discriminated against by Defendants, by reason of her disabilities. *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir. 2003) (citing *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir. 1998)). To establish a prima facie case of disparate treatment under the ADA, Plaintiff must present evidence that animus against her "was *a* significant factor in the position taken by the municipal decision-makers themselves or by those to whom the decision-makers were knowingly responsive." *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 49 (2d Cir. 2002), *superseded by statute on other grounds,* ADA Amendments of 2008, Pub.L. No. 110–325, 122 Stat. 3553 (quoting *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 425 (2d Cir.1995)); *see also McCulloch v. Town of Milan,* 12-4574-CV, 2014 WL 1189868 (2d Cir. Mar. 25, 2014) (slip copy). By contrast, to establish a prima facie case of disparate treatment under § 504, Plaintiff must show that the Defendants gave her a failing grade *solely* because of her disabilities. *Reg'l Econ. Cmty. Action Program,* 294 F.3d at 49 (citing *Flight v. Gloeckler,* 68 F.3d 61, 64 (2d Cir.1995)).

Defendants do not challenge that Plaintiff is a qualified individual with a disability nor that they are subject to the statutes. However, Plaintiff has failed to plead adequately, with non-conclusory allegations, that she was discriminated against because of her disabilities.

The Complaint fails to allege adequately, except in the most conclusory fashion, that the comments ascribed to Defendant Roberts had any connection to or influence on the failing

—31—

grades that Plaintiff received in her seminar. Plaintiff alleges that Defendant Roberts asked Ms. Roerden whether Plaintiff prepared her own lesson plans, had violent interactions with students, paid attention while conducting her classes, and whether Ms. Roerden believed Plaintiff should be a teacher. Compl. at ¶ 51. These inquiries are the only specific allegations made by Plaintiff and, standing alone, they fail to provide a nexus to the grades she received from Defendant Roberts. Instead, Plaintiff makes conclusory allegations that she was not given a passing grade because Defendant Roberts did not believe that Plaintiff should be a teacher in light of her disabilities, *see, e.g.*, Compl. at ¶¶ 50, 54, 56, 71-72, and that the other Defendants ratified these grades with indifference, *see, e.g.*, Compl. at ¶¶ 89–90. Such unadorned allegations are insufficient for a Complaint to survive a motion to dismiss in federal court under Fed. R. Civ. P. 12(b)(6). Nothing in the Complaint raises the plausible inference that Plaintiff's disability was a substantial factor in her seminar grade or that she was given a failing grade solely because of her disability. *See, e.g., Forziano v. Indep. Grp. Home Living Program, Inc.*, 13-CV-0370, 2014 WL 1277912, at *8 (E.D.N.Y. Mar. 26, 2014) (Wexler, J.). Accordingly, in the absence of sufficiently pled allegations constituting a prima facie disparate treatment claim under either Title II of the ADA or § 504 of the Rehabilitation Act, Defendants' motion to dismiss the Second and Third Causes of Action is granted.

## CONCLUSION

Defendants' motion to dismiss is GRANTED. The Court DISMISSES the Complaint in its entirety. The Clerk of the Court is directed to close the case.

**SO ORDERED**

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: Brooklyn, New York
      May 9, 2014